# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

|  |  |
|---|---|
| **In Re:** | |
| **Brent T. Cherne and Sheryl L. Cherne,** | **Bankruptcy Case No. 12-02327-JDP** |
| **Debtors.** | |

## MEMORANDUM OF DECISION

**Appearances:**

Matthew T. Christensen, Angstman, Johnson & Associates, PLLC, Boise, Idaho, Attorney for Debtors Brent and Sheryl Cherne.

Jennifer D. Auchterlonie, U.S. Department of Justice, Washington, D.C., Attorney for the United States of America, Internal Revenue Service.

*Introduction*

Chapter 7[1] Debtors Brent and Sheryl Cherne ("Debtors") objected to

the Internal Revenue Service's ("IRS") proof of claim filed in this

bankruptcy case.  Dkt. Nos. 35 and 37.  IRS filed a response to Debtors'

objection, and later moved to dismiss Debtors' objection for lack of

standing, or in the alternative, for summary judgment.  Dkt. Nos. 46 and

55.[2]  Debtors then filed a cross-motion for summary judgment.  Dkt. No. 66.

On June 24, 2014, the Court held a hearing at which the parties

appeared and presented arguments in support of their positions.  At the

---

[1]  Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all Rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.  Civil Rule references
are to the Federal Rules of Civil Procedure, Rules 1 – 86.

[2]  An objection to a proof of claim is a contested matter governed by Rule
9014, which incorporates many of the adversary proceeding rules including, as
relevant here, Rule 7056 governing summary judgment motions.  *Lundell v.
Anchor Constr. Specialist, Inc. (In re Lundell)*, 223 F.3d 1035, 1039 (9th Cir. 2000).
Civil Rule 12, governing motions to dismiss, is not applicable in contested
matters, and therefore, the Court declines to consider IRS's motion to dismiss.
IRS's arguments urging dismissal, however, are properly before the Court in
connection with its summary judgment motion.

MEMORANDUM OF DECISION – 2

conclusion of the hearing, the Court took the issues under advisement.

The Court has reviewed the record, pleadings, and briefs, together with the affidavits and discovery materials submitted by the parties in support of the respective motions.  This Memorandum of Decision represents the Court's findings of fact, conclusions of law, and decision concerning the issues.  Rules 9014 and 7052.

### *Facts*[3]

Brent Cherne is an accountant who has worked primarily in the healthcare industry since obtaining his certified public accountant designation in 1984.  Mr. Cherne formed Florence Hospital, LLC ("Florence Hospital") in 2009, to operate a hospital in Florence, Arizona. The sole member of Florence Hospital was Healthcare of Florence, LLC, also formed in 2009, which held title to the real property upon which Florence Hospital operated.  According to its operating agreement,

---

[3] The parties do not dispute the material facts.  This recitation of the facts is taken primarily from the IRS statement of undisputed facts, filed along with its motion for summary judgment.  Dkt. No. 56; *see* LBR 7056.1(b)(1)(A).  Debtors also filed a statement of undisputed facts in which they, for the most part, agree with the IRS statement.  Dkt. No. 67-1.

MEMORANDUM OF DECISION – 3

Florence Hospital was managed by Initiatives Healthcare, LLC

("Initiatives").  Initiatives, in turn, was the majority interest-holder in

Healthcare of Florence, LLC.  Mr. Cherne held a 25% ownership interest in

Initiatives, was the Chief Financial Officer (CFO) of Initiatives, and was a

board member of Florence Hospital.  Initiatives had "authority to conduct

and be responsible for the day-to-day activities of [Florence Hospital],

subject to the direction of the Board of Members."  Operating Agreement

of Florence Hospital, LLC, Dkt. No. 57-2 at 7.

As the CFO of Initiatives, the manager of Florence Hospital, Mr.

Cherne was authorized to receive a salary of $180,000 per year, however,

he was never paid that much during Florence Hospital's existence.  Mr.

Cherne's responsibilities as CFO in 2009 required him to secure financing

of, and investors in, the hospital enterprise.  He was also tasked to

establish the books and records for Florence Hospital, which included a

general ledger and other records used to produce periodic financial

statements.

In 2010, Florence Hospital hired more than one CFO, each of whom

MEMORANDUM OF DECISION – 4

Mr. Cherne supervised while he was still attempting to obtain financing for the hospital.  Mr. Cherne was also involved in hiring other Florence Hospital staff.  Sometime in 2010, Mr. Cherne began to loan his personal funds to Florence Hospital for a total amount of more than $500,000.  In addition, Mr. Cherne personally guaranteed about $30 million in loans given to Florence Hospital.

Throughout its existence, and during this time in particular, Mr. Cherne negotiated loans on behalf of Florence Hospital; he had signature authority on all of the hospital's bank accounts in Idaho and Arizona; he helped prepare and signed the quarterly federal payroll tax returns of the hospital; and he prepared the company's periodic financial statements, which at the times relevant here, disclosed that the hospital was not paying its payroll taxes.

From almost its inception in 2009, Florence Hospital struggled financially.  It soon fell into default on its obligations to its primary lender, Clearwater, which had loaned Florence Hospital in excess of $10 million

MEMORANDUM OF DECISION – 5

for the construction of the hospital.[4]  Despite Florence Hospital's default,

Clearwater offered to loan additional money to the hospital so long as

Clearwater could exercise significant control of the hospital's spending.

Florence Hospital apparently acceded to this arrangement, referred to by

the parties as the "lock box," although the parties' agreement was not

reduced to writing.  However, it is undisputed that the parties agreed that

Clearwater would be allowed to review in advance, and to approve the

payment of, all of Florence Hospital's operating expenses and bills.  To

accomplish this, officers of Florence Hospital would list all of the

outstanding expenses to be paid, and send the list to Mr. Cherne and

representatives of Clearwater.  A conference call would then be held

during which Mr. Cherne, other officers of Florence Hospital, and

representatives of Clearwater would discuss the list of expenses and

determine which bills would be paid.  After some time for reflection, a

second conference call was held during which Clearwater would instruct

---

[4] The nature and extent of any security held by Clearwater for its loan to
Florence Hospital is not clear.

MEMORANDUM OF DECISION – 6

which payments were to be made.  With this approval, Clearwater would transfer an appropriate amount of funds to Florence Hospital's bank accounts to facilitate the payments.  Florence Hospital employees would then distribute the Clearwater-authorized payments to creditors.

In 2011, and through 2012, Florence Hospital did not have the cash to pay all of its operating expenses, even with Clearwater's help, and as a result, only the "most urgent" bills were paid in order to keep the hospital's doors open.  Trans., Depo. of Brent Cherne, Dkt. No. 57-1, Exh. 200 at 21, lines 8-17.  Most importantly, during this time, the hospital did not pay accruing federal payroll taxes.  Mr. Cherne participated in the process of determining which hospital expenses and bills would be paid (or not), and he was keenly aware that the hospital's required federal payroll taxes were accruing, due, but unpaid.[5]

---

[5] Just as one example of the role he played, and of the extent of his knowledge of the impact of these spending decisions, Mr. Cherne authored a January 26, 2011 email to a representative at Clearwater in which he noted that Florence Hospital had a number of outstanding bills at that time, including federal payroll taxes, but stated, "I would suggest for this week paying everything in the above list except the [payroll] taxes and the 34 other vendors."

MEMORANDUM OF DECISION – 7

Eventually, Florence Hospital was forced to cease operations and file for chapter 11 bankruptcy protection in the District of Arizona. In 2012, following the dismissal of its bankruptcy case, Florence Hospital was administratively dissolved.

Debtors filed this chapter 7 case on September 21, 2012. Dkt. No. 1. On April 16, 2013, when IRS had not done so, Debtors filed a priority proof of claim on behalf of IRS for what they estimated were $800,000 in unpaid Florence Hospital payroll taxes. Claim No. 6-1. On June 10, 2013, Debtors filed an Amended Objection to that proof of claim in which they argued that Mr. Cherne was not personally liable for the payroll taxes. Dkt. No. 37. In response to all of this, IRS then filed an amended the proof of claim to increase the amount due to $1,252,215.01 as a priority claim for outstanding payroll taxes and penalties owed by Florence Hospital for the fourth quarter of 2009, all of 2011, and the first quarter of 2012. Claim No. 6-2. On February 18, 2014, IRS amended the proof of claim again, to

---

Dkt. No. 57-7, Exh. 206 at 1.

MEMORANDUM OF DECISION – 8

eliminate the payroll tax liability it has claimed for the fourth quarter of

2009, resulting in a balance of $905,402.00.  Claim No. 6-3.

### *Analysis and Disposition*

## I.  Arguments of the Parties

While they are chapter 7 debtors, Debtors argue that, because the

IRS debt would be a excepted from discharge in their bankruptcy case, *see*

§ 523(a)(1), they have the requisite standing to prosecute an objection to

the IRS claim.  As to the debt, Debtors argue that their objection should be

sustained because the requirements of 26 U.S.C. § 6672, which imposes a

penalty on "responsible" parties who willfully fail to pay over trust fund

taxes, are not met.

First, Debtors argue, Mr. Cherne would not be cast as a "responsible

person" under the applicable case law interpreting 26 U.S.C. § 6672.[6]  For

support, Debtors point to the fact that Clearwater, not Mr. Cherne, was

---

[6]  At oral argument Debtors all but conceded Mr. Cherne fits the definition
of a "responsible person" under that provision of the Internal Revenue Code,
nevertheless, the Court will address that issue below.

MEMORANDUM OF DECISION – 9

ultimately in control of which of Florence Hospital's bills and obligations were paid. Second, Debtors contend that, even if Mr. Cherne is technically a "responsible person," an additional prong of the test under 26 U.S.C. § 6672 is not satisfied here because Mr. Cherne's actions did not amount to a "willful failure" to pay the payroll taxes. In this respect, Debtors rely upon an exception to the "willful" prong of the test that exempts a taxpayer from liability for any penalties for unpaid payroll taxes if the funds available to do so were "encumbered."

IRS disputes that Debtors have standing to object to its claim because they will not receive any distribution in the case, thus Debtors are not a "party in interest" for purposes of § 502(a) (providing that a proof of claim is deemed allowed unless "a party in interest . . . objects.").

As to Mr. Cherne's liability for the tax debt, IRS first argues that he is a "responsible person" under 26 U.S.C. § 6672. IRS contends that Mr. Cherne's position and responsibilities with Florence Hospital render him a "responsible person" notwithstanding the agreement with Clearwater.

MEMORANDUM OF DECISION – 10

Next, IRS argues that Mr. Cherne's failure to pay over the payroll taxes

owed by Florence Hospital was willful.  Finally, IRS contests Debtors'

argument that the funds needed to pay the taxes were "encumbered" as

that exception has been defined under the relevant case law.

**II.  Applicable Law**

   A.  Debtors' Standing to Object to the IRS Proof of Claim

   A timely filed proof of claim is deemed allowed unless a party in

interest objects.  § 502(a).  With respect to tax claims, and objections

thereto, the burden of proof on proving liability for the tax is the same as it

is outside of bankruptcy.  *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20-

21 (2000).

   "Ordinarily, the trustee or some party in interest, other than the

debtor, prosecutes claim objections.  A debtor, in [his] individual capacity,

lacks standing to object unless [he] demonstrates that [he] would be

'injured in fact' by the allowance of the claim."  *Cheng v. K&S Diversified*

*Invs., Inc. (In re Cheng)*, 308 B.R. 448, 454 (9th Cir. BAP 2004), *aff'd mem.*, 160

MEMORANDUM OF DECISION – 11

F.App'x 644 (9th Cir. 2005).   However, there are two recognized

exceptions to the proposition that a chapter 7 debtor lacks standing to

object to a creditor's proof of claim: (1) when disallowance of the claim

would create a surplus case, with the excess amounts payable to the

debtor; and (2) where the claim at issue would not be dischargeable.  *See*

*Wellman v. Ziino (In re Wellman)*, 378 B.R. 416 n.5 (9th Cir. BAP 2007)

(stating that a chapter 7 debtor has "[s]tanding to object to claims . . . when

there is a sufficient possibility of a surplus to give the chapter 7 debtor a

pecuniary interest or when the claim involved will not be discharged.");

*see also In re Lona*, 393 B.R. 1, 4 (Bankr. N.D. Cal. 2008) (citing *In re Willard*,

240 B.R. 664, 668 (Bankr. D. Conn. 1999); *Menick v. Hoffman*, 205 F.2d 365

(9th Cir. 1953)).

B.  Summary Judgment Standard

Rule 7056 incorporates Civil Rule 56, which sets forth the familiar

summary judgment standard for evaluating the parties' motions:  "The

court shall grant summary judgment if the movant shows that there is no

MEMORANDUM OF DECISION – 12

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Civil Rule 56(a).

When parties submit competing motions for summary judgment targeting the same claims or issues, "each motion must be reviewed on its own merits."  *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).  That is, a trial court is required to review the evidence properly submitted in support of each motion to determine whether each motion satisfies the summary judgment standard.  *Id.*  Even when faced with cross-motions for summary judgment, the court still has the responsibility to determine whether there are genuine issues of material fact for trial.  *Id.*

### C.  The 26 U.S.C. § 6672 Penalty

The Internal Revenue Code requires an employer to withhold certain taxes from its employees' wages, and to remit those amounts withheld to IRS.  *See* 26 U.S.C. §§ 3102; 3402.  The employer is required to collect these sums each pay period and to pay the amounts collected to

MEMORANDUM OF DECISION – 13

IRS at least quarterly.  *See* 26 U.S.C. § 7501(a); 26 C.F.R. §§ 31.6011(a)-(1);

31.6011(a)-4; 31651(a).  "In the interim, the employer holds the collected

taxes in trust for the government."  *Davis v. United States*, 961 F.2d 867, 869

(9th Cir. 1992) (citing 26 U.S.C. § 7501(a)).  If these trust funds are not paid

to IRS by the employer, "IRS may assess a civil penalty against responsible

corporate officials equal to the amount of the delinquent trust fund taxes  .

. . [pursuant to] 26 U.S.C. § 6672."  *Davis*, 961 F.2d at 869.

> In relevant part, 26 U.S.C. § 6672 provides:
>
> (a) General rule.--Any person required to collect,
> truthfully account for, and pay over any tax imposed by
> this title who willfully fails to collect such tax, or
> truthfully account for and pay over such tax, or
> willfully attempts in any manner to evade or defeat any
> such tax or the payment thereof, shall, in addition to
> other penalties provided by law, be liable to a penalty
> equal to the total amount of the tax evaded, or not
> collected, or not accounted for and paid over . . . .

This statute has been interpreted by the courts to require a two-step

process in determining whether an individual taxpayer is a "responsible

person" who is liable for the penalty.  Under this rubric, a court must

MEMORANDUM OF DECISION – 14

decide whether "the individual (1) was 'required to collect, truthfully

account for, and pay over the withholding taxes' (commonly known as

'responsible person') and (2) 'willfully failed to meet one or more of these

obligations.'" *Nakano v. United States*, 742 F.3d 1208, 1211 (9th Cir. 2014)

(quoting *United States v. Sotelo*, 436 U.S. 268, 274 (1978)); *see also Purcell v.*

*United States*, 1 F.3d 932, 936 (9th Cir. 1993).

IRS bears the initial burden of proof concerning Mr. Cherne's

liability for the penalties, but that burden is satisfied by "introducing

evidence of the tax assessment under [26 U.S.C.] § 6672. The burden then

shifts to the taxpayer to prove that he is not liable." *Nakano*, 742 F.3d at

1211 (citing *Oliver v. United States*, 921 F.2d 916, 919 (9th Cir. 1990)).

### i. Responsible Person

The Ninth Circuit has held that an individual is a "responsible

person" under 26 U.S.C. § 6672 when "such individual had the authority

required to exercise significant control over the corporation's financial

affairs, regardless of whether he exercised such control in fact. The

MEMORANDUM OF DECISION – 15

authority that permits control carries with it a nondelegable duty to ensure

that withholding taxes are duly collected and paid over to the

government." *Purcell*, 1 F.3d at 937. Relevant factors to consider in

determining whether an individual is a "responsible person" are: (1) his

ability to sign checks on behalf of the corporation; (2) his status as an

officer of the company; (3) whether he could hire or fire employees; and (4)

his discretion over which creditors to pay. *United States v. Jones*, 33 F.3d

1137, 1140 (9th Cir. 1994).

### *ii. Willful Failure to Pay and the Encumbered Funds Exception*

"In general, 'wil[l]fulness within the meaning of [26 U.S.C.] § 6672

has been defined as a voluntary, conscious and intentional act to prefer

other creditors over the United States.'" *Nakano*, 742 F.3d at 1211 (citing

*Davis*, 961 F.2d at 871); *see also In re Dorr-Haider*, 96.1 IBCR 6 (Bankr. D.

Idaho 1996). To find that a responsible person acted willfully, IRS need

not show that the individual acted with bad motive or an intent to defraud

in preferring another creditor over the United States; indeed, an act

MEMORANDUM OF DECISION – 16

"motivated by a reasonable cause may nonetheless be willful." *Davis*, 961

F.2d at 871 (citing *Barnett v. United States*, 594 F.2d 219, 221 (9th Cir. 1979)).

In this regard, the Ninth Circuit has instructed that:

> If a responsible person knows that withholding taxes
> are delinquent, and uses corporate funds to pay other
> expenses, even to meet the payroll out of personal
> funds he lends the corporation, our precedents require
> that the failure to pay withholding taxes be deemed
> 'willful.' *Sorenson v. United States*, 521 F.2d 325 (9th Cir.
> 1975); *Teel v. United States*, 529 F.2d 903 (9th Cir. 1976).
> This may seem oppressive to the employer and
> employees, *Sorenson*, 521 F2d at 329, and amount to
> 'unwittingly' willful, *Teel v. United States*, 529 F.2d at
> 905, which seems an oxymoron, but the proposition is
> established law.

*Phillips v. United States Internal Revenue Service*, 73 F.3d 939, 942 (9th Cir.

1996).

An exception to the willful prong of the test has developed in the

case law, which declines to impose the penalty for a taxpayer's failure to

pay over payroll taxes if those funds were "encumbered."  However, in

determining the applicability of this exception, "funds are encumbered

only where the taxpayer is legally obligated to use the funds for a purpose

MEMORANDUM OF DECISION – 17

other than satisfying the preexisting employment tax liability and if that

legal obligation is superior to the interest of the IRS in the funds." *Nakano*,

742 F.3d at 1211 (quoting *Honey v. United States*, 963 F.2d 1083, 1090 (8th

Cir. 1992)). The burden to prove that the funds are "encumbered" is on

the taxpayer. *Nakano*, 742 F.3d at 1211; *Purcell*, 1 F.3d at 939.

**III. Application of Law to Facts**

A.  Debtors' Standing

Debtors have the requisite standing to prosecute an objection to

IRS's proof of claim. Mr. Cherne is a "party in interest" under § 502(a)

because, as the parties agree, the alleged debt would be excepted from

discharge in Debtors' bankruptcy case under § 523(a)(1). As a result, the

exception to the general rule that a chapter 7 debtor lacks standing to

object to a proof of claim in a non-surplus case applies.

Viewed pragmatically, a decision by this Court that Mr. Cherne is

not liable for nearly a million dollars in IRS penalties would work a

considerable advantage to Debtors' financial position post-bankruptcy.

MEMORANDUM OF DECISION – 18

Clearly, then, Debtors have a profound pecuniary interest in whether the tax debt is a valid one.  Simply put, Debtors have shown that they have standing to contest IRS's claim.

### B.  Summary Judgment is Proper

The Court agrees with the parties that, as to the validity of IRS's claim against Mr. Cherne, there are no genuine issues of material fact requiring a trial.  Instead, as the parties explain in their motions, only an issue of law remains, and resolution of that issue can be appropriately accomplished via summary judgment.  In other words, to resolve the summary judgment motions, the Court need only decide whether, given the undisputed facts, Mr. Cherne was a "responsible person" who willfully failed to pay the subject payroll taxes such that he is liable for the penalty imposed under 26 U.S.C. § 6672.

### C.  The 26 U.S.C. § 6672 Penalty

IRS has carried its initial burden of proof by introducing the assessment of tax due in its submissions in this case.  *See Koff v. United*

*States*, 3 F.3d 1297, 1928 (9th Cir. 1993) ("It is settled in this circuit that

Certificates of Assessment and Payments[, Form 4340,] are 'probative

evidence in and of themselves and, in the absence of contrary evidence, are

sufficient to establish that . . . assessments were properly made.'") (quoting

*Hughes v. United States*, 953 F.2d 531, 540 (9th Cir. 1992)). Forms 4340 for

each relevant tax period were submitted by IRS. Exhibits 211-216. As a

result, the burden of proof shifts to Debtors to prove the assessments

under 26 U.S.C. § 6672 are incorrect. *Nakano*, 742 F.3d at 1211 (citing *Oliver*

*v. United States*, 921 F.2d 916, 919 (9th Cir. 1990)).

> *i. Responsible Person*

The Court concludes that Mr. Cherne is a "responsible person"

under 26 U.S.C. § 6672. As the CFO of Initiatives, and a board member of

Florence Hospital, Mr. Cherne "had the authority required to exercise

significant control over the corporation's financial affairs." *Purcell*, 1 F.3d

at 937. In this role, Mr. Cherne had check-signing authority, he helped

prepare Florence Hospital's financial statements and tax returns, he hired

MEMORANDUM OF DECISION – 20

and supervised operating and financial officers of Florence Hospital, and

he exercised discretion concerning which of Florence Hospital's creditors

to pay.

Mr. Cherne's status as a "responsible person" is not delegable. *Id.*

Therefore, that Clearwater and Florence Hospital agreed to some form of a

"lock box" arrangement did not relieve Mr. Cherne of his obligation to

ensure that withholding taxes for the hospital's employees were timely

paid to IRS.

*ii. Willful Failure to Pay and the Encumbered Funds Exception*

The Court concludes that Mr. Cherne willfully failed to pay the

withholding taxes of Florence Hospital, and that he has not adequately

shown that the hospital's funds which could have been used to make those

payments were "encumbered."

Mr. Cherne was aware of the fact that Florence Hospital was not

paying its withholding tax obligation. Even so, Mr. Cherne actively

MEMORANDUM OF DECISION – 21

participated in the process of paying some creditors, but not others (like

IRS) in order to keep Florence Hospital operating.[7]  In doing so, Mr.

Cherne engaged in "voluntary, conscious and intentional act[s] to prefer

other creditors over the United States."  *Nakano*, 742 F.3d at 1211 (citing

*Davis*, 961 F.2d at 871).  Although the payment of a company's most

pressing expenses and debts at any given time arguably constitutes a

reasonable, legitimate business practice for an officer of the company

attempting to keep the business operating, such a decision nonetheless is

clothed with serious consequences for that officer if employee taxes

---

[7] Mr. Cherne insists in his affidavit, Dkt. No. 67-2 at ¶ 12, that the email, referenced above at n.5, wherein he recommends that the withholding taxes not be paid for one week during January 2011, is not the smoking gun that IRS suggests.  This is because, he explains, he knew at that time that Florence Hospital would be able to pay the required payroll taxes the next week, and in fact, it did so, leaving no balance due for that period.  But even assuming this is true, the email is significant because it shows that Mr. Cherne was actively involved in the decision-making process concerning what creditors were to be paid, or not, under the "lock box" arrangement with Clearwater.  Using this process, similar decisions to forego payment were made at other times, eventually resulting in the unpaid withholding taxes for the other time periods reflected in IRS claim.

MEMORANDUM OF DECISION – 22

eventually remain unpaid.  Put bluntly, Mr. Cherne and other officers of

Florence Hospital and its affiliates gambled that, to bridge the critical

financial needs of the hospital, it was best to leave taxes, as opposed to

other debts unpaid.  As things turned out, they lost that bet.

Debtors have not demonstrated that Mr. Cherne's willful failure to

pay Florence Hospital's withholding taxes was excused because the funds

available to pay the taxes were "encumbered."  In *Purcell*, the Ninth

Circuit addressed a taxpayer's argument that the funds were

"encumbered" due to the "lock box" arrangement his company had

entered into with a creditor.  There, the taxpayer's company had granted a

security interest to the creditor in all of the company's assets.  *Purcell*, 1

F.3d at 938.  Pursuant to the financing agreement, the company's gross

receipts were actually deposited in a "lock box" account, and new funds

were provided to the company from the creditor.  *Id.*  The court, after

reviewing the relevant case law, observed:

MEMORANDUM OF DECISION – 23

> [s]ome courts have been willing to recognize as an
> "encumbrance" only a "legal obligation" of the
> taxpayer to use funds to pay creditors other than the
> government. *See Honey*[, 963 F.2d at 1090], *cert denied*,
> 506 U.S. 1028 (1992) . . . others have defined the term
> more broadly to encompass not only legal obligations
> per se, but also "restrictions imposed by a
> creditor"—restrictions that, while perhaps not legally
> enforceable, may be practically irresistible because they
> arise out of the disparity of bargaining power as
> between the taxpayer and its source of financing. *See id.*
> (quoting *In re Premo*, 116 B.R. 515, 535 (Bankr. E.D.
> Mich. 1990)).

*Id.* at 938-39.  The panel then decided that it need not select a governing

rule in that case because, "even under [the] relatively relaxed definition of

'encumbered funds,'" as outlined in *In re Premo*, the taxpayer had failed to

prove the "particular restrictions" placed on his company's use of funds.

*Id.* at 939.

More recently, in *Nakano*, the Ninth Circuit revisited the question of

what constitutes "encumbered" funds under 26 U.S.C. § 6672, and

endorsed the test stated in *Honey,* the more stringent test.  Under that test,

MEMORANDUM OF DECISION – 24

"funds are encumbered only where the taxpayer is legally obligated to use the funds for a purpose other than satisfying the preexisting employment tax liability and if that legal obligation is superior to the interest of the IRS in the funds." *Nakano*, 742 F.3d at 1212 (quoting *Honey*, 963 F.2d at 1090).

Here, there was no written "lock box" agreement, but rather, an informal arrangement apparently existed between Florence Hospital and Clearwater that resembled that type of agreement discussed in *In re Premo*, under which the restrictions on the hospital's funds were imposed by the creditor with the promise of additional funding for the fledgling hospital. Florence Hospital, as well as Mr. Cherne through his compliance and cooperation, voluntarily entered into the agreement with Clearwater to obtain additional funding, and continued with the arrangement even when it became clear the funding needed to pay the withholding tax arrearage would not be forthcoming. On this record, the Court concludes that Debtors have not carried their burden to prove the funds in this case

MEMORANDUM OF DECISION – 25

were "encumbered," under the test articulated in *Honey* and adopted by the Ninth Circuit in *Nakano*.

### Conclusion

There are no genuine issues of material fact, and IRS is entitled to judgment as a matter of law overruling Debtors' objection to its proof claim. Mr. Cherne was a "responsible person" for purposes of 26 U.S.C. § 6672 who willfully failed to pay over to IRS Florence Hospital's withholding taxes. As a result, the penalties imposed upon him described in the IRS claim, Claim No. 6-3, are indeed his valid obligations.

In a separate order, IRS's motion for summary judgment will be granted; Debtors' motion for summary judgment will be denied; and Debtors' objection to the IRS proof of claim, Claim No. 6-3, will be overruled.

Dated:  August 7, 2014

MEMORANDUM OF DECISION – 26

_____

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 27